646 A.2d 633

**Daniel WILLIAMS, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (REALTY SERVICES COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1993.

Decided July 28, 1994.

John J. McAuliffe, Jr., for petitioner.

Marshall A. Haislup, III, for respondent.

Before COLINS and FRIEDMAN, JJ., DELLA PORTA, Senior Judge.

DELLA PORTA, Senior Judge.

Daniel Williams (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) which reversed the referee's decision awarding Claimant disability benefits.[1] The issues raised on appeal are threefold: (1) whether Claimant waived the objection to the timeliness of the answer of Realty Services Company (Employer) to his claim petition; (2) whether Employer was estopped from denying its liability for Claimant's work-related injury due to its issuance of one indemnity benefit check, allegedly made by mistake; and (3) whether Claimant met his burden of proving a causal relationship between the work-related physical injury and the mental disability.

Claimant was employed by Employer as a maintenance man. On February 27, 1985, while at work, Claimant sustained an injury when he slipped on the floor and struck in the

1. This case was reassigned to the authoring judge on April 28, 1994.

back of his head on a door. He was treated for the injury at the hospital as an outpatient. On March 12, 1985, Employer's insurance carrier issued a timely notice of compensation denial on the basis of a lack of medical evidence of Claimant's disability. Claimant thereafter received from Employer's insurance carrier an indemnity benefit check in the amount of $386.26 for the period from February 28, 1985 to March 13, 1985. The check was dated March 22, 1985. Employer's insurance carrier subsequently issued a second notice of compensation denial on April 4, 1985, alleging its inability to contact Claimant to investigate the claim and the lack of evidence to support Claimant's disability.

On April 16, 1985, Claimant filed a claim petition, alleging that as the result of the February 27, 1985 accident, he sustained injury, consisting of "severe headache, scalp contusion, resulting cervical strain, lower back pains, temporary numbness to right arm, coxisoitis [sic], muscle spasms in both legs and feet." On July 1, 1985, Employer filed an answer denying the allegations in the claim petition.

At the first hearing held on April 18, 1987, Claimant testified that he returned to work in March or April, 1985, but after three or four days he stopped working due to the headaches and pain in his neck, shoulder and legs. He further testified that after the injury he was having depression and stress and was admitted to the Veterans Administration Medical Centers in May 1985, December 1985 and December 1986, for psychiatric evaluations.

At a subsequent hearing, Claimant presented the deposition testimony of Eric W. Fine, M.D., board-certified in psychiatry, taken on May 4, 1989. Dr. Fine testified that Claimant had symptoms of depression, anxiety and increased dependency on alcohol and cocaine and that Claimant was disabled from a post-traumatic syndrome caused by the February 17, 1985 work injury.[2]

2. Claimant did not present any medical testimony to establish his disability resulting from the physical injury sustained on February 27, 1985. Although the record failed to reveal amendment to the claim petition to allege a mental injury, at the March 15, 1989 hearing,

In opposition, Employer presented the September 18, 1989 deposition testimony of Dr. Timothy Michals, board-certified in psychiatry and neurology, who evaluated Claimant on June 23, 1988. Dr. Michals opined that Claimant did not sustain any psychiatric injury as a result of the February 27, 1985 injury. The adjuster for Employer's insurance carrier testified that the check for the two-week indemnity benefits was issued by mistake and that the follow-up notice of compensation denial was subsequently issued on April 4, 1985.

The referee first of all rejected Claimant's contention that the facts alleged in the claim petition were deemed admitted by Employer due to its failure to file the answer within fifteen days after the circulation of the claim petition on May 24, 1985, in violation of Section 416 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 821. The referee concluded that Claimant waived that issue due to his failure to timely raise it.

With respect to the merits of the claim petition, the referee concluded that Employer was estopped from denying liability for Claimant's disability resulting from his *physical* injury because it initially recognized the liability by making an indemnity payment for the two-week period. The referee stated that "[i]n essence, [Employer] seeks to revoke an initial recognition of liability on the basis of error without filing a petition to review its de facto acceptance of the claim...." Referee's Decision, p. 7. Consequently, the referee treated Employer's answer to the claim petition as a petition for review or termination, and the claim petition as an answer to the petition for review or termination. The referee found that Employer failed to present any medical testimony or evidence to satisfy the burden of establishing its entitlement to termination of the disability benefits related to the work-related *physical* injury. As to the mental injury claim, the referee found Dr. Fine's testimony credible and concluded that Claimant met the burden of establishing that the alleged mental injury was related to the February 17, 1985 injury.

Claimant's counsel indicated that the claim was based upon Claimant's disability caused by both the physical and mental injury.

The referee accordingly dismissed the "petition for termination" and awarded Claimant weekly benefits beginning February 28, 1985, giving Employer credit for the two-week compensation previously paid and for wages earned by Claimant in March 1985. The referee also ordered Employer to pay litigation costs incurred by Claimant, except the copying costs. Both parties appealed the referee's decision to the Board.

On appeal, the Board reversed the referee's award of benefits, concluding that the doctrine of estoppel was inapplicable under the facts in this case and that Claimant failed to present sufficient evidence to establish the causal relationship between the physical injury and the mental disorder.[3]

■ Claimant first contends that he did not waive the issue of the timeliness of Employer's answer to the claim petition. The record establishes, however, that Claimant never objected to Employer's presentation of evidence at the hearings. Further, Claimant did not raise the issue of the timeliness of the answer until after the referee closed the record, almost six years after the claim petition was filed. Hence, Claimant failed to preserve the issue for our review. *Smith v. Workmen's Compensation Appeal Board (Dep't of Labor & Industry)*, 159 Pa.Commonwealth Ct. 171, 632 A.2d 1033 (1993).

■ Next, Claimant contends that Employer was estopped from denying its liability and therefore was not allowed to unilaterally discontinue payment of benefits without seeking a termination of benefits by filing a petition for review or termination of benefits pursuant to Section 413(a) of the Act, 77 P.S. §§ 771–772. If Employer's liability for Claimant's disability resulting from the February 27, 1988 injury is established under the doctrine of estoppel, as Claimant urges, Employer would have the burden of proving the necessary elements for termination of benefits. Thus, the ultimate issue

3. Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

on appeal is the proper burden of proof applicable to this matter.

The doctrine of equitable estoppel is applicable where one party through its acts negligently misrepresents material facts knowing or having reason to know that the other party will justifiably rely upon the misrepresentation to its detriment and the other party so relies. *Fahringer, McCarty & Grey, Inc. v. Workmen's Compensation Appeal Board (Green)*, 107 Pa.Commonwealth Ct. 597, 529 A.2d 56 (1987). In a worker's compensation case, the application of equitable estoppel must be restricted in light of statutory constraints. *Swartz v. Workmen's Compensation Appeal Board (Dutch Pantry Restaurant)*, 117 Pa.Commonwealth Ct. 47, 543 A.2d 201 (1988), *appeals denied*, 522 Pa. 580, 581, 559 A.2d 40, 41 (1989).

Under Section 406.1 of the Act,[4] an employer must promptly investigate the claim and commence payment of compensation within twenty-one days after its notice or knowledge of an employee's disability (1) pursuant to the parties' agreement establishing the compensation payment or (2) if no such agreement has been entered into, pursuant to a notice of compensation payable unilaterally acknowledging its liability. If the employer controverts its liability for the injury, the employer must issue a notice of compensation denial within twenty-one days of its notice or knowledge of the employee's disability. Section 406.1 of the Act and 34 Pa.Code § 121.13.[5]

4. Added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1. Section 406.1, effective at the time relevant to this matter, provided in pertinent part:

 The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to *an agreement upon the compensation payable* or *a notice of compensation payable* as provided in section 407,.... The first installment of compensation shall be paid *not later than the twenty-first day* after the employer has notice or knowledge of the employe's disability. (Emphasis added.)

5. Section 406.1 further provides in relevant part:

 If the insurer controverts the right to compensation it shall promptly notify the employee or his dependent, on a form prescribed by the

Further, the Act sets forth the specific procedures for the employer who commences the payment without agreement on the compensation payable. Section 407 of the Act, 77 P.S. § 731, provides in relevant part:

> Where payment of compensation is commenced without an agreement, the employer or insurer shall *simultaneously give notice of compensation payable* to the employe or his dependent, on a form prescribed by the department, *identifying such payments as compensation under this act* and shall forthwith furnish a copy or copies to the department as required by rules and regulations. (Emphasis added.)

The 1993 amendment to Section 406.1, which was not applicable at the time of the proceedings before the referee, allows the employer to issue a notice of temporary compensation payable *within twenty-one days* after the notice or knowledge of the disability and commence the compensation payment for a period not exceeding six weeks without prejudice and without admitting liability. The Act is silent, however, as to the legal effect of the employer's payment made after the timely notice of compensation denial but after the twenty-one day period.

The referee relied upon *Mosgo v. Workmen's Compensation Appeal Board (Tri–Area Beverage, Inc.),* 84 Pa.Commonwealth Ct. 316, 480 A.2d 1285 (1984), to support the application of the doctrine of estoppel to this matter. In *Mosgo,* the employer did not issue a notice of compensation payable or denial within twenty-one days after its notice of the injury. Instead, thirty-six days after the notice, it agreed to pay the weekly benefits, while reserving the right to deny the claim based upon a future medical reports. The employer continued

department, stating the grounds upon which the right to compensation is controverted and shall forthwith furnish a copy or copies to the department.

The regulation promulgated under Section 406.1 provides at 34 Pa. Code § 121.13:

If compensation is controverted, Notice of Workmen's Compensation Denial, Form LIBC–496, shall be sent to employe or dependent fully stating the grounds upon which the right to compensation is controverted, with a copy to the Department, no later than 21 days after notice or knowledge to the employer of employe's disability or death.

to pay the weekly benefits for five weeks. Then, after receiving a medical report indicating that the claimant's injury was not work related, the employer filed a notice of compensation denial. The claimant filed a petition to review, alleging that the employer unilaterally suspended the payment of benefits in violation of the Act.

This Court reversed the Board's order affirming the referee's dismissal of the claimant's petition, holding that the employer's reservation of the right to deny its liability was null and void under the Act and that the employer was therefore deemed to have agreed to make the compensation payment without reservation. The Court reasoned:

> [S]ince Respondents may not profit by their delinquency in failing to carry out the mandates of Sections 406.1 and 407, they are estopped to disavow their acceptance of liability and must, therefore, be held bound by agreement to pay compensation with the same legal effect as would apply if they had formally complied with the Act and the applicable Rules and Regulations of the Department; and, accordingly, the referee and the Board erred in placing the burden of proof on the Claimant; rather the burden was and is on the Respondents.

*Id.* at 325, 480 A.2d at 1289.

The facts in the matter *sub judice* are distinguishable from those in *Mosgo.* Unlike in *Mosgo,* Employer complied with the requirements of Section 406.1 and 34 Pa.Code § 121.13, by filing the notice of compensation denial within twenty-one days of the date of the injury. It also issued the second notice of compensation denial immediately after the payment. There is no evidence in the record suggesting that Employer attempted to deny the liability after the payment on the basis of any medical report or its investigation of the claim as in *Mosgo.* At the hearing, Claimant stated that he could not remember the date or month the insurance carrier's adjuster contacted him. He stated only that "it was after the notice of denial." April 8, 1987 Hearing, N.T., p. 24. Thus, Employer's actions in this matter do not support the conclusion that when the

indemnity check was sent to Claimant, it intended to commence the compensation payment without agreement.

*Mosgo* does not stand for the proposition, as Claimant asserts, that an employer accepts the liability once it issues one compensation check, notwithstanding its denial of liability in the timely notice of compensation denial and another notice filed immediately after issuing the check. Rather, the *Mosgo* Court held only that where an employer agrees to pay compensation but reserves the right to deny its liability in the future, without filing a notice of compensation payable or denial *within twenty-one days*, the employer is estopped to disavow its acceptance of liability.

Since Employer complied with the requirement of the Act by issuing the timely notice of compensation denial, and denied its liability in the two notices sent to Claimant, the *Mosgo* holding does not support the referee's application of the doctrine of estoppel. Hence, after a careful examination of the facts in this matter, we conclude that the doctrine of estoppel is inapplicable to this matter and that the referee, therefore, committed an error of law in placing the burden upon Employer to establish its entitlement to termination of benefits.

 Lastly, Claimant's claim was based mainly upon his psychological disability resulting from the alleged work-related physical injury. A claimant must prove all the necessary elements to support an award of compensation. *Haney v. Workmen's Compensation Appeal Board*, 65 Pa.Commonwealth Ct. 461, 442 A.2d 1223 (1982). "[P]sychological disorders such as suicidal tendencies and depression are not the 'immediate and direct' or 'natural and probable consequences' of a [physical injury]." *Hilton Hotel Corp. v. Workmen's Compensation Appeal Board (Totin)*, 102 Pa.Commonwealth Ct. 528, 533, 518 A.2d 1316, 1319 (1986). Therefore, Claimant had the burden of establishing not only the disability caused by the physical injury, but also the causal relationship be-

tween the physical injury and his psychiatric disability by unequivocal medical testimony.[6]

The referee accepted the testimony of Claimant's medical witness and found that Claimant met the burden of establishing a psychiatric disability caused by the February 27, 1985 physical injury. In so concluding, however, the referee assumed that Claimant's physical disability has been established, but this assumption had been reached under the improper allocation of the burden of proof. Where, as here, the referee incorrectly placed the burden of proof, neither this Court nor the Board can determine whether the referee would have reached the same credibility determination and conclusion under the correct allocation of the burden of proof. *Tunstall v. Workmen's Compensation Appeal Board (St. Clair Memorial Hosp.)*, 107 Pa.Commonwealth Ct. 345, 528 A.2d 719 (1987).

Accordingly, we vacate the Board's order and remand this matter to the referee for further proceedings and a determination of Claimant's claim petition under the correct allocation of the burden of proof.[7]

## ORDER

AND NOW, this 28th day of July, 1994, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is vacated, and this matter is remanded for further proceedings on the claim petition filed by Daniel Williams consistent with this opinion, including presentation of

---

**6.** *See also School District of Philadelphia v. Workmen's Compensation Appeal Board (Coe)*, 163 Pa.Commonwealth Ct. 89, 639 A.2d 1306 (1994) (even when the claimant's total disability resulting from the work-related slip and fall injury was established by a notice of compensation payable, the claimant still had the burden of proving a causal connection between the physical injury and the resulting psychiatric disability alleged in the petition to set aside the final receipt).

**7.** The issues raised by Claimant concerning his entitlement to attorney's fees and reimbursement of copying costs need not be addressed because we vacate the Board's order and remand for further proceedings.

any additional testimony or evidence by the parties and the referee's determination.

Jurisdiction relinquished.

FRIEDMAN, Judge, concurring and dissenting.

I concur with the majority in its determination that Daniel Williams (Claimant) failed to preserve for our review whether Realty Service Company (Employer) filed a timely Answer to the Claim Petition. With regard to the other issues properly before this Court, I respectfully dissent.

First, the majority has decided that Employer is not estopped from denying liability after commencing payment of compensation to Claimant following a timely Notice of Compensation Denial. In order to reach this conclusion, the majority determined that *Mosgo v. Workmen's Compensation Appeal Board (Tri-area Beverage, Inc.)*, 84 Pa.Commonwealth Ct. 316, 480 A.2d 1285 (1984), did "not support the referee's application of the doctrine of estoppel" where Employer issued a timely Notice of Compensation Denial and that Employer's actions "do not support the conclusion that when the indemnity check was sent to Claimant, it *intended* to commence the compensation payment without agreement." (Majority Op. at 284–285) (emphasis added).

Initially, I agree with the majority that the case of *Mosgo* does not apply here because Employer did file a timely Notice of Compensation Denial.[1] However, I disagree with the ma-

---

1. However, the majority incorrectly distinguishes *Mosgo* in asserting that "[t]here is no evidence in the record suggesting that Employer attempted to deny the liability after the payment on the basis of any medical report *or its investigation of the claim.*" (Majority Op. at 284) (emphasis added).

 Quite the contrary, Employer admits in its second Notice of Compensation Denial that it has not completed its investigation (unable to contact Claimant for investigation and "no *further* medical evidence of disability"). Therefore, like *Mosgo,* Employer sought to withhold its admission of liability because it had not completed its ongoing investigation.

 Although the two cases are distinguishable on other grounds, they are nevertheless analogous with respect to the employer's motive in hesitating to admit liability.

jority's statutory analysis of the legal effect of a payment that follows a timely Notice of Compensation Denial. I believe that Employer's payment constitutes an admission of liability for compensation under the procedures established by The Pennsylvania Workers' Compensation Act \(Act).[2]

In deciding to the contrary, the majority has accepted without question that Employer issued the compensation payment to Claimant by mistake.[3] I do not believe that the record supports this assumption. Indeed, I believe that the record supports the referee's rejection of that assumption.[4] As the ultimate factfinder with responsibility for adjudging witness credibility and resolving conflicts in the testimony, the referee's finding must be upheld if supported by substantial evidence in the record. *Investors Diversified Services v. Workmen's Compensation Appeal Board (Howar)*, 103 Pa.Commonwealth Ct. 562, 520 A.2d 958 (1987). I believe that the referee has reasoned cogently in determining from the record before him that Employer did not issue the check in error. This Court cannot now *assume* just the opposite and justify that assumption by distorting the testimony of the adjuster.

**2.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

**3.** Employer maintains that the compensation check was issued in error. Section 413 of the Act, 77 P.S. § 771, provides that an employer may challenge a Notice of Compensation Payable on grounds of mistake. In such cases, the burden is on the employer to prove the error. *Armak–Akzona v. Workmen's Compensation Appeal Board (Naylor)*, 149 Pa.Commonwealth Ct. 543, 613 A.2d 640 (1992). Here, Employer failed to prove that its issuance of the check was a mistake.

**4.** The referee rejected Employer's argument that the check was issued in error because:

(1) Employer's witness, the current claims adjuster, conceded that the check was for "two weeks of compensation" due to Claimant for the work injury of February 27, 1985.

(2) Employer's witness testified only that he "believed" the compensation check was issued in error;

(3) nothing in the insurer's file definitively explained how or why the check was issued in error; and

(4) the second Notice of Compensation Denial mentioned an inability to contact Claimant for investigation purposes; however, Claimant stated in uncontroverted testimony that he was contacted by insurer "after the notice of denial."

(R.R. at 16A.)

In its opinion, the majority states that "[t]he adjuster for Employer's insurance carrier testified that the check for the two-week indemnity benefits was issued by mistake." (Majority Op. at 280.) However, the adjuster who testified had no personal knowledge of the circumstances under which Employer issued the check or the second Notice of Compensation Denial [5] and testified only that he "believed" that the check was issued by mistake. (R.R. at 16a and 102a.) Indeed, Employer presented no evidence supporting its claim that the check was issued by mistake. The majority has simply not addressed this glaring deficiency in the record.[6]

The majority makes much of the fact that Employer issued a second Notice of Compensation Denial "immediately" after the payment (Majority Op. at 284), implying that the second notice *proves* that the compensation payment was a mistake. The facts of this case belie the majority's assertion that the second notice was sent "immediately" after the payment.[7] However, even if that were true, the Act does not give any legal effect to the issuance of an untimely second Notice of Compensation Denial. It *might be* evidence that Employer sent Claimant a check by mistake *if* Employer had stated that its issuance was to rectify the mailing of a benefits check in

5. In fact, the adjuster had only been assigned to Claimant's case several weeks before his testimony was taken on April 5, 1989, (R.R. at 98a), four years after the issuance of the check and the second Notice of Compensation Denial.

6. Employer did not present the testimony of the employee who authorized the check or the testimony of the employee who was responsible for issuing the second Notice of Compensation Denial. In fact, Employer did not present the testimony of any supervisory staff to explain what happened when the check or second notice was issued. No one with personal knowledge testified on Employer's behalf regarding the "mistake!" Nor was there *any* evidence in Employer's file on Claimant to definitively explain how or why the check was issued in error.

Still, the majority does not even consider the possibility that Employer issued the check because an authorized employee determined that Claimant was entitled to payment.

7. Indeed, the payment was dated March 22, 1985 and the second Notice of Compensation Denial was sent about two weeks later on April 4, 1985.

error. The second notice, however, does not mention that the prior benefits check had been sent in error.

The Act provides a comprehensive scheme for the commencement and cessation of benefit payments. Any failure to comply with the Act or the regulations promulgated thereunder can result in the imposition of penalties. *See* section 435(b) of the Act, 77 P.S. § 991. The Act does not give an employer the right of self-help. *Moody v. Workmen's Compensation Appeal Board,* 127 Pa.Commonwealth Ct. 65, 560 A.2d 925 (1989). Rather, the Act provides the Supersedeas Fund as a vehicle to protect an insurer who makes compensation payments to a claimant who ultimately is determined not to be entitled thereto. *St. Margaret Memorial v. Workmen's Compensation Appeal Board,* 152 Pa.Commonwealth Ct. 631, 620 A.2d 586 (1993).[8]

The Act provides that an employer may commence payment of compensation benefits pursuant to the agreement of both parties. However,

> [w]here payment of compensation is commenced without an agreement, the employer or insurer *shall simultaneously give notice of compensation payable* to the employe or his dependent, on a form prescribed by the department, identifying such payments as compensation under this act and shall forthwith furnish a copy or copies to the department as required by rules and regulations.

77 P.S. § 731 (emphasis added). In this case, Employer paid compensation without an agreement but failed to comply with the procedural provisions of section 407 because it did not simultaneously file a Notice of Compensation Payable.

Instead of commenting on Employer's violation of the Act,[9] the majority rewards Employer for failing to officially ac-

8. When a supersedeas has been requested and denied, and payments of compensation are made as a result, the insurer who has made such payments shall be reimbursed if it is subsequently determined after a hearing that such compensation was not, in fact, payable. Section 443(a) of the Act, 77 P.S. § 999.

9. If Employer had fully complied with the provisions of the Act, the majority opinion could not stand because the Notice of Compensation

knowledge its liability to Claimant after commencing payments. Unlike the majority, I do not believe that the failure to simultaneously give Notice of Compensation Payable negates Employer's affirmative act in commencing compensation payments. Such an affirmative act, even subsequent to a Notice of Compensation Denial, is consistent with an admission of liability.[10] If the employer later refuses to accept liability, it bears the burden of proof to show reasons why compensation should be terminated, whether because of a mistake or otherwise.

The Act describes exclusive conditions under which an employer can legally terminate payment of compensation, none of which have been met here.[11] Clearly, the second

Payable that should have been filed simultaneously with the initial check would have been a clear admission of liability.

10. The Act is designed to promote prompt investigation of injuries and prompt payment of compensation. Section 406.1 of the Act, 77 P.S. § 717.1. If an employer is not able to complete an investigation within the time period allowed under the Act, the employer must nevertheless decide whether to admit or deny liability by the twenty-first day after notice of injury.

 In practice, if an employer denies liability, as Employer initially did here, and the employer finds from its investigation that the claimant ought to receive compensation payments after all, the employer would commence payment of benefits and forego the expense of contesting the claim. The original Notice of Compensation Denial would lose its effect. Likewise here, when Employer commenced the payment of benefits, the original Notice of Compensation Denial lost its effect as a denial of liability.

11. An employer and employee may terminate compensation payments by executing a Supplemental Agreement or a Final Receipt of Compensation pursuant to section 408 of the Act, 77 P.S. § 732. An employer may also seek to terminate compensation payments by filing a petition under various subsections of section 413 of the Act, 77 P.S. §§ 771–774.2, including:

 (1) Petition to Terminate upon cessation of disability under Section 413(a) of the Act, 77 P.S. § 772,

 (2) Petition to Suspend upon cessation of disability under Section 413(a) of the Act, 77 P.S. § 772,

 (3) Petition to Review for error under Section 413(a) of the Act, 77 P.S. § 771,

 (4) Request for Supersedeas under Section 413(b) of the Act, 77 P.S. § 774, or

 (5) Petition to Terminate filed within fifteen days of a return to work at prior or increased earnings under Section 413(c) of the Act, 77 P.S. § 774.2.

Notice of Compensation Denial does not extinguish liability because it is not one of the enumerated ways to terminate benefit payments. Therefore, a presumption of continued disability exists based solely on Claimant's physical injuries, with the burden on Employer to prove entitlement to termination by one of the avenues available under the Act.[12]

Because I disagree with the majority in regard to the allocation of the burden of proof, I also must disagree with their decision to remand for a determination of whether Claimant's psychiatric disability is causally related to his physical injuries. I believe that because of Employer's acceptance of liability, Claimant is entitled to a presumption of continuing physical disability with the burden on Employer to prove a right to terminate benefits either by showing that the disability ceased altogether or that the disability continues and is not work related. *Giant Eagle v. Workmen's Compensation Appeal Board,* 161 Pa.Commonwealth Ct. 35, 635 A.2d 1123 (1993). Employer did not do this here. Because Claimant would receive no greater benefit by showing causation for his psychiatric injuries, I would not reach this issue.

Finally, the majority has decided not to address whether the Board erred in failing to award litigation costs and attorney fees to Claimant. Because of my disagreement with the majority opinion, I would address this issue. I would resolve the matter as follows.

However, here the referee specifically found:
9. After payment to Williams of the check for $386.26, the Defendant ceased all payments without execution of a Supplemental Agreement, Final Receipt of Compensation, Order of the Bureau, or the filing of a Petition under Section 413(c) of the Act.
(Referee's Finding of Fact, No. 9.)

12. In fact, even though Employer did not pursue one of these avenues, the referee treated Employer's Answer to the Claim Petition as a Petition for Termination under § 413 of the Act and noted that the evidence presented by Employer failed to prove that Claimant's physical injury had resolved or abated, or that work was available within Claimant's restrictions. (R.R. at 17A.) Accordingly, the referee concluded that Claimant remained entitled to compensation benefits. (Conclusion of Law, No. 3.)

Claimant initially requests that the xerox costs for copying certain records, the pleadings and a brief be granted as proper litigation expenses.[13] Under Section 440 of the Act, a successful claimant is awarded reasonable costs for witnesses, necessary medical examination and the value of unreimbursed lost time to attend proceedings. 77 P.S. § 996. Costs incurred for reproducing medical records are reimbursable when they are actually used in the case. *Boeing Vertol Co. v. Workmen's Compensation Appeal Board (Coles),* 107 Pa.Commonwealth Ct. 388, 528 A.2d 1020 (1987), *appeal denied,* 517 Pa. 619, 538 A.2d 501 (1988). I would decline to award xerox costs for pleadings and a brief. As to the medical records, I am unable to determine which of these medical documents were actually copied and used in the case; therefore, I would remand to ascertain whether any xerox costs were for medical records actually used in the case.

Claimant also requests attorney fees based on an unreasonable contest by Employer. In this regard the referee concluded:

7. As the Claimant has not specifically pled or requested imposition of counsel fees on the administrative record, all counsel fees awarded below shall be charged to the award of the Claimant. *Daugherty v. W.C.A.B.,* 97 Pa.Commonwealth Ct. 142, 510 A.2d 147 (1986).

(Referee's Conclusion of Law, No. 7.) I believe that the referee's understanding of the law in this regard is correct and therefore would deny the request for attorney fees.

In summary, I would hold that Claimant is entitled to a presumption of continuing disability until such time as Employer proves by appropriate means that the benefits should be terminated; therefore, I would reverse the Board and reinstate the referee's award of benefits. Further, because I believe that Claimant would be entitled to reimbursement for costs incurred in reproducing medical documents introduced

---

13. The referee's Finding of Fact, No. 20 states:

20. Although the Claimant alleged entitlement to recoup "Xerox costs" for records, pleadings, and brief, this proposed charge sounds in the nature of office overhead and is not a proper litigation expense.

into evidence, and the referee made no findings in that regard, I would remand for determination of which medical records, if any, were actually copied and used in this case, making them reimbursable.