**CITY OF PHILADELPHIA, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (RILLING), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 7, 2003.

Decided June 23, 2003.

Reargument En Banc Denied
Aug. 4, 2003.

electronic copy of the findings of fact and decisions.

Martin G. Malloy, Philadelphia, for petitioner.

Richard R. DiStefano, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and MIRARCHI, Senior Judge.

OPINION BY Senior Judge MIRARCHI.

The City of Philadelphia (Employer) petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a workers' compensation judge (WCJ) granting the claim petition of George Rilling (Claimant) and the fatal claim petition of his widow, Catherine Rilling (Claimant's Widow). We affirm.

On August 2, 1993, Claimant filed a claim petition alleging that as of May 27, 1993, he contracted lung disease and cancer of the right lung and chest as a result of working as a firefighter for Employer for twenty-four years. Employer denied the material allegations of the petition. On April 14, 1994, following Claimant's death, Claimant's Widow filed two fatal claim petitions, the first alleging that Claimant died of work-related asbestosis, the second alleging that Claimant had sustained an occupational disease pursuant to Section 108(o) of the Workers' Compensation Act (Act).[1] Section 108(o) defines the term "occupational disease" to include:

1. Act of June 2, 1915, P.L. 736, *as amended,* added by the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1(o).

Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit of safety of the public, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen.

A hearing was convened before WCJ Linda Newman. Claimant testified in his own behalf prior to his death and presented the deposition testimony of Jonathan Gelfand, M.D. Employer presented the deposition testimony of Giuseppe Pietra, M.D. and Theodore Rodman, M.D.

Claimant testified that he worked as a firefighter for Employer from June 7, 1965 until August 1, 1989, when he left as a result of a broken knee and because he would lose his breath while engaged in strenuous activity. During his twenty-four years of employment with Employer, he was exposed to smoke, heat, fumes, and gasses in all extremes of weather, and under stressful conditions. He also testified that he smoked cigarettes between the ages of twenty-four and thirty-one, and thereafter smoked four or five cigars daily for the next seven years.

Dr. Gelfand testified that he examined Claimant on January 12, 1994, and ordered pulmonary function studies and chest x-rays. Dr. Gelfand diagnosed Claimant as suffering from metastatic lung cancer and opined that Claimant's work-related exposure to smoke, fumes, and gasses was a substantial contributing factor in his contraction of lung cancer.

After Claimant's death on April 14, 1994, Dr. Gelfand examined his death certificate; medical records from the Medical College of Pennsylvania Hospital, the Police and Fire Medical Association, and Fox Chase Cancer Center; and the medical reports and depositions of Drs. Pietra and Rodman. Based on this information, as well as his examination of Claimant, Dr. Gelfand opined that Claimant's exposures while a firefighter were a substantial contributing factor to his death from lung cancer.

Dr. Pietra did not dispute in his testimony that Claimant had died of lung cancer. He never examined Claimant in his lifetime, but as a pathologist studied Claimant's medical records and pathology slides from a tumor removed from just under the skin of the left breast. Based upon his examination of tissue from the tumor, Dr. Pietra opined that the cancer originated in the adrenal glands, not the lungs, and that the cancer then metastasized from the adrenal glands to the lungs. Dr. Pietra testified that there is no relationship between the exposures experienced by firefighters and cancer originating in the adrenal glands. Dr. Pietra therefore opined that Claimant's fatal lung cancer was unrelated to his work as a firefighter.

Dr. Rodman essentially testified that he relied upon Dr. Pietra's reputation and expertise to agree with him that the cancer originated in the adrenal glands and then metastasized to the lungs.

WCJ Newman found that the testimony of Drs. Pietra and Rodman was credible and persuasive, but that of Dr. Gelfand was not. As a result, she determined that Claimant and his widow failed to meet their burden under the claim and fatal claim petitions.

The Board vacated and remanded the matter, however, after determining that the WCJ failed to indicate that she applied the presumption set forth in Section 301(e) of the Act, 77 P.S. § 413, for the benefit of Claimant. Section 301(e) provides:

If it be shown that the employe, at or immediately before the date of disabili-

ty, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

The Board observed that Claimant had shown that he was disabled by, and eventually died from, a disease of the lungs occurring after four or more years of service as a firefighter during which time he was exposed to heat, smoke, fumes, and gasses. The Board therefore determined that Claimant's claim fell under the definition of occupational disease under Section 108(*o*) of the Act, and he was thus entitled to the Section 301(e) rebuttable presumption that his disease was related to his employment.

In its instructions for remand, the Board stated:

> We ... note that although we must remand this case to the WCJ for application of the presumption, said presumption is rebuttable and the evidence of record, if the WCJ should continue to credit it, is legally sufficient to overcome said presumption.

> We, therefore, remand for the WCJ to consider the record in light of the presumption of causation under Section 301(e), 77 P.S. § 413. On remand, the WCJ must determine if the testimony of Dr. Pietra and Dr. Rodman was sufficiently persuasive to meet the employer's burden to rebut the presumption....

Board's Opinion, March 15, 2001, p. 9 (footnote omitted).

On remand, the matter was assigned to WCJ Thomas Devlin. In a decision dated October 30, 2001, WCJ Devlin determined that Employer's evidence failed to rebut the presumption that Claimant was disabled and thereafter died from an occupational disease. The WCJ noted that Dr. Pietra's testimony did not address the presumption that Claimant's lung cancer was caused by his employment. The Board affirmed, noting that Dr. Pietra testified that he could not rule out metastasis from the lung to the adrenal gland, rather than from the adrenal gland to the lung, as was his opinion. This petition for review followed.

 This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence or whether an error of law or a constitutional violation occurred. *Columbo v. Workmen's Compensation Appeal Board (Hofmann)*, 162 Pa. Cmwlth.307, 638 A.2d 477 (1994).[2] The WCJ is the sole arbiter of the credibility and the weight of testimony and other evidence, and he or she is free to reject or accept the testimony of any witness in whole or in part. *Id.* So long as the findings of the WCJ are supported by substantial evidence, they must be accepted as conclusive on appeal. *Id.; Dancison v. Workmen's Compensation Appeal Board (Penn Hills Senior High School Claims Management Services)*, 145 Pa. Cmwlth.10, 602 A.2d 423, *petition for allowance of appeal denied*, 532 Pa. 666, 616 A.2d 987 (1992).

 Employer raises the following issues: (1) whether the Board erred by vacating WCJ Newman's decision when the

---

**2.** Also, the "capricious disregard" of evidence standard of review is now a component of appellate consideration in every administrative agency adjudication where the question is properly brought before the Court. *Leon E.* *Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002). Employer has not raised a capricious disregard of evidence issue in this case.

WCJ specifically found that Claimant did not suffer or die from an occupational disease; (2) whether Employer waived any appellate issues regarding the Board's decision to vacate and remand; (3) whether WCJ Devlin went beyond the scope of his authority by arriving at different credibility determinations than those made by WCJ Newman; and (4) assuming that Claimant was entitled to the Section 301(e) presumption, whether WCJ Devlin erred by not finding that Employer presented sufficient evidence to rebut this presumption. Claimant's Widow does not challenge Employer's assertion that it did not waive any issue arising from the Board's original order to vacate and. remand. Indeed, it is now well established that a Board's remand order is interlocutory and unappealable. *Romine v. Workers' Compensation Appeal Board (CNF, Inc./the Potato Sack)*, 798 A.2d 852 (Pa.Cmwlth. 2002); *Berks County Intermediate Unit v. Workmen's Compensation Appeal Board (Rucker)*, 158 Pa.Cmwlth.305, 631 A.2d 801 (1993), *petition for allowance of appeal denied*, 537 Pa. 614, 641 A.2d 313 (1994).

Employer first argues that the Board erred by vacating and remanding WCJ Newman's original decision so that the evidence would be evaluated in light of the Section 301(e) presumption. Employer correctly states that in order for the Section 301(e) presumption to apply, a claimant must show that he or she suffered and is disabled from an occupational disease. *Buchanan v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 659 A.2d 54 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 542 Pa. 675, 668 A.2d 1137 (1995). Employer goes on to argue, however, that in order to establish an occupational disease under Section 108(*o*), a claimant is required to do more than simply demonstrate that he was a firefighter of four years or more; exposed to heat, smoke, fumes, or gasses; and

suffering and disabled from a disease of the lungs or heart. Employer does not provide authority for this argument, nor does it state what else would be required. Rather, Employer essentially contends that since the WCJ found the testimony of Drs. Pietra and Rodman to be credible and persuasive, then Claimant's Widow failed to establish that Claimant suffered from an occupational disease.

 Employer is placing the cart before the horse by making this argument, however. The Section 301(e) presumption is an evidentiary advantage for a claimant who has contracted an "occupational disease" in an occupation or industry in which such disease is a hazard. *Sun Home Health Visiting Nurses v. Workers' Compensation Appeal Board (Noguchi)*, 815 A.2d 1156 (Pa.Cmwlth.2003). Here, Claimant clearly established that he had contracted an occupational disease for purposes of the Section 301(e) presumption. He established, without contradiction, that he contracted, was disabled from, and ultimately died from lung cancer, a disease of the lungs, following twenty-four years of service as a firefighter where he was exposed to heat, smoke, fumes, and gasses. These factors all fall within the definition of "occupational disease" under Section 108(*o*). *See Edwards v. Workmen's Compensation Appeal Board (Hunlock Township)*, 137 Pa.Cmwlth.70, 585 A.2d 56 (1990), *petition for allowance of appeal denied*, 528 Pa. 633, 598 A.2d 286 (1991) (it is only necessary to prove the existence of the hazards described in the Act to show that a heart or lung disease is an occupational disease pursuant to Section 108(*o*)). Moreover, his medical witness definitely linked the lung cancer to his occupation as a firefighter.

The fact that WCJ Newman ultimately determined that Claimant's medical wit-

ness was less credible than Employer's medical witnesses, who did not find a link between Claimant's lung cancer and his occupation, does not lead to the conclusion, argued by Employer, that Claimant failed to establish his right to the presumption. Had WCJ Newman given Claimant the Section 301(e) rebuttable presumption and thereafter continued to credit the testimony of Drs. Pietra and Rodman, the conclusion would have been that Employer *rebutted* Claimant's presumption, not that he never had one in the first place. Where as here, however, when there is no dispute that Claimant suffered and died from lung cancer after years of exposure to certain environmental factors as a firefighter, Employer's argument would essentially do away with the Section 301(e) presumption, as it focuses upon the ultimate credibility determinations of the WCJ and the ultimate question of whether the claimant has an occupational disease entitling him or her to benefits. Employer argues as if this were a typical hearing on a claim petition, not a hearing where the Act specifically allows for one party to enjoy a rebuttable presumption.

In *City of Wilkes–Barre v. Workmen's Compensation Appeal Board (Zuczek),* 541 Pa. 435, 664 A.2d 90 (1995), the Supreme Court did not follow the scheme advanced by Employer herein, but very plainly determined that when the WCJ credits the medical testimony of the employer's witness that acknowledged a general connection between the claimant's disease and his or her occupation, but opines that the disease was non-work-related based on certain evidence, then this testimony serves to *rebut* the claimant's Section 301(e) presumption instead of showing that it did not apply for lack of an occupational disease. In *City of Wilkes–Barre,* the claimant suffered a heart attack while on duty as a firefighter, after twenty-five years of service and having fought approximately 6,500 fires. These facts alone resulted in the claimant enjoying the Section 301(e) presumption based on an occupational disease defined by Section 108(*o*), despite the fact that the WCJ found credible that opinion of the employer's medical witness that the claimant's heart attack was not caused by his employment but was caused by a combination of thirty years of smoking, hypertension, and a history of heart disease in the family. The Supreme Court affirmed the WCJ's determination that the employer had *rebutted* the claimant's Section 301(e) presumption; it did not conclude that the WCJ's acceptance of the employer's evidence showed that the claimant never proved an occupational disease for purposes of applying the Section 301(e) presumption.

Similarly, in *Buchanan* the claimant suffered a heart attack after twenty-one years of service as a firefighter and thus established an occupational disease for purposes of applying the Section 301(e) presumption. This presumption was rebutted by credible testimony from the employer's medical witness that (even given the presumption of an occupational disease) a number of factors, such as twenty years of smoking, family history, hypertension, and high cholesterol, established that the heart attack was not work related. We held in *Buchanan* that the claimant was entitled to the Section 301(e) presumption "because it is clear that our legislature has determined that heart disease is causally related to being a firefighter" pursuant to Section 108(*o*). *Id.,* 659 A.2d at 57. Similarly, our legislature has determined that lung cancer and other diseases of the lung are causally related to being a firefighter pursuant to Section 108(*o*). Thus, the Board in this matter correctly held that Claimant was entitled to enjoy the Section 301(e) presumption. Employer's first argument

is therefore without merit.[3]

■ Employer next argues that WCJ Devlin went beyond the scope of his authority by arriving at different credibility determinations than those made by WCJ Newman.[4] In light of the very clear directive given by the Board in its decision to remand, this argument is patently without merit. The Board specifically granted the WCJ on remand the leeway to credit or not credit the testimony of Drs. Pietra and Rodman in light of the presumption afforded to Claimant pursuant to Section 301(e). The Board specifically directed the WCJ to decide whether the testimony of these witnesses was "sufficiently persuasive" to meet Employer's burden to rebut the presumption. Indeed, there would not have been any purpose in remanding the matter to the WCJ if she or he was restricted to the finding that the testimony of Employer's witnesses was sufficient to rebut the presumption once it was applied. Unless the remand order directing new findings of fact restricts the WCJ from making new credibility determinations, the WCJ may make such determinations. *See Reinert v. Workers' Compensation Appeal Board (Stroh Companies)*, 816 A.2d 403 (Pa.Cmwlth.2003); *Samuel J. Lansberry, Inc. v. Workmen's Compensation Appeal Board (Switzer)*, 168 Pa. Cmwlth.64, 649 A.2d 162 (1994); *John A. Miller & Associates, Ltd. v. Workmen's Compensation Appeal Board (DeFelice)*, 150 Pa.Cmwlth.634, 616 A.2d 131 (1992). Here, the Board specifically directed the WCJ to make new credibility determinations. Employer's argument is therefore without merit.

■ Finally, Employer argues that even if Claimant was entitled to the Section 301(e) presumption, WCJ Devlin erred by not finding that Employer presented sufficient evidence to rebut this presumption. This argument impermissibly attacks the WCJ's role as fact finder, as Employer essentially restates the opinions of Drs. Pietra and Rodman that Claimant's cancer originated in the adrenal glands, not the lungs. Issues of evidence credibility and weight are solely within the province of the WCJ, and we are absolutely precluded from reweighing the evidence and usurping the WCJ's role as the fact finder. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992). Here, WCJ Devlin noted that Dr. Pietra never examined Claimant during his lifetime, never participated in any studies of firefighters, and did not dispute that Claimant had contracted lung cancer and died from it. Although Dr. Pietra opined that the cancer originated in the adrenal glands, he did not address in his testimony the presumption that Claimant's cancer was occupationally related. The WCJ also noted that Dr. Rodman essentially only adopted the opinion of Dr. Pietra and, like Dr. Pietra, never addressed the presumption that Claimant's cancer was occupationally related. These findings are supported by the record. Therefore, there is no basis to

---

**3.** Employer does not challenge the Board's determination that WCJ Newman failed to indicate in her decision that she applied the presumption. Also, Employer does not challenge the Board's determination that when the WCJ incorrectly allocates the burden of proof, the Board may not determine whether the same conclusion would have been reached had the WCJ correctly allocated the burden of proof. *Williams v. Workmen's Compensation Appeal Board (Realty Services*

*Co.)*, 166 Pa.Cmwlth.276, 646 A.2d 633 (1994).

**4.** Employer's argument also appears to resurrect his first argument that Claimant is ineligible to enjoy the Section 301(e) presumption and anticipates its final argument that, assuming the presumption applies, it presented sufficient evidence to rebut the presumption.

disturb the WCJ's credibility determinations.

Accordingly, the Board's order must be affirmed.

### ORDER

AND NOW, this 23rd day of June, 2003, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

### DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. The initial decision of the WCJ properly denied the claim petition. The Board ordered a remand on the theory that Claimant was entitled to a presumption that the cancer present in his lung was caused by his employment as a firefighter. However, the Board erred in invoking the statutory presumption because Claimant was found to have suffered from adrenal cancer, which happened to spread to his lungs, and not from a primary lung cancer.

The relevant facts are as follows. Claimant worked for the City of Philadelphia as a firefighter from 1965 to 1990, when he retired because of a non-work related knee injury. In May of 1993 he noticed a lump in his skin, over his left breast, and was hospitalized at Rolling Hill Hospital for surgical removal of the tumor. The pathology report concluded that the tumor was cancerous, but it could not pinpoint the source of the cancer because the cells were so poorly differentiated. Additional tests showed a mass in his left lung. He was referred to Fox Chase where he began a regimen of chemotherapy and radiation. On December 6, 1993, Fox Chase biopsied tissue from Claimant's left lung and concluded that it was a "metastatic adenocarcinoma of unknown primary." Reproduced Record 109a (R.R. ——). A large mass was discovered on his right adrenal gland, but it was not biopsied. He died in April of 1994. Although an autopsy was requested by the hospital, the family denied the request.[1] R.R. 224–225a.

Section 301(e) of the Act, 77 P.S. § 413, allows a claimant a presumption that his occupational disease was caused by employment if the disease is a hazard in his occupation or industry. Disease of the heart or lung after four or more years of service as a firefighter is a defined occupational disease. Section 108(o) of the Act, 77 P.S. § 27.1(o). However, Claimant never established that he suffered from a disease of the lung; accordingly, the presumption in Section 301(e) had no application to his claim petition.

Claimant's only evidence of lung cancer was the opinion of Jonathan Gelfand, M.D., who examined Claimant in January of 1994. His testimony detailed a history of Claimant's work experience and exposure to smoke and dust, and he discounted Claimant's long history of cigarette and cigar smoking. Dr. Gelfand was not found credible by the WCJ.[2] Notably, Claimant did not produce a pathology report that identified his aggressive cancer as a lung cancer.

By contrast, Employer's medical experts identified Claimant's cancer as adrenal cancer, and they were believed by the WCJ. The key witness was Giuseppe G.

---

1. The lawyer for Claimant asserted that an autopsy would have yielded definitive results. R.R. 225a.

2. The record indicates several possibilities for this finding: Dr. Gelfand admitted that he routinely gives depositions for Claimant's counsel (R.R. 107a); Dr. Gelfand did not review the medical records from Fox Chase (R.R. 109a–110a); and the pulmonary function tests performed in Dr. Gelfand's office yielded anomalous results (R.R. 221a–223a).

Pietra, M.D., certified in anatomic pathology and a Professor of Pathology at the University of Pennsylvania School of Medicine; his specialty is pulmonary cardiovascular disease. He reviewed the testimony of Claimant and Dr. Gelfand; the pathology slides from the biopsy of Claimant's initial tumor; electomicrophotographs made by the Medical College of Pennsylvania; and biopsies taken at the Medical College Hospital and Fox Chase. He conducted his own tests and studies.

Dr. Pietra explained that microscopic examination of pathology material is the only way to establish with any degree of certainty the nature and most likely site of origin of a malignant tumor. R.R. 145a. The microscopic samples established that Claimant's cancer was a carcinoma as opposed to a sarcoma. Dr. Pietra then looked for features that might suggest that the cancerous cell had its origin in the lung, but he could not find those features. R.R. 147a. For example, tests for keratin, a substance present in tumor arising from lung and skin cells, were negative. Dr. Pietra then used an electromicroscope and did tests in his own lab on the tumor; these studies[3] identified the site of origin as the adrenal gland, rather than the lung or skin. Dr. Pietra's conclusion was based upon peculiar structures found in the mitochondria and in the endoplasmic reticulum of Claimant's cancer cells that are found only in adrenal cells. R.R. 148a–149a. He

then explained that adrenal carcinomas are rare, aggressive and difficult to discover; they first present in an advanced stage as multiple tumor nodules in the lung, skin and bone. R.R. 150a. By contrast, lung cancer tends to spread to the brain and liver. R.R. 151a. Dr. Pietra opined that Claimant's cancer originated in his adrenal gland[4] and was not causally related to his work as a firefighter. Indeed, the medical literature does not relate adrenal cancer to any particular occupation.

Theodore Rodman, M.D., board certified in internal medicine, also testified for Employer; he specializes in pulmonary medicine. Dr. Rodman reviewed Claimant's medical records prior to his final illness, such as the 1989 X-rays done when Claimant was hospitalized for a tibia fracture, in addition to all the records, biopsies, X-rays and CAT scans generated by Claimant's fight with cancer. R.R. 195a. Dr. Rodman explained that a well-differentiated cancer cell is easy to identify, but in Claimant's case a convential microscopic histologic examination could not identify the organ where the tumor arose. R.R. 196a–198a. Noting that Dr. Pietra is a world-class pulmonary pathologist, Dr. Rodman was persuaded by Dr. Pietra's analysis that the site of origin was Claimant's adrenal gland. Dr. Rodman testified that the medical literature does not indicate that adrenal carcinoma is occupationally related

---

**3.** These studies were done on the initial tumor sample from the chest well, which was the only sample large enough for Dr. Pietra's tests.

**4.** The second WCJ characterized Dr. Pietra's testimony as not ruling out a primary lung cancer. A single statement should not be taken out of context as defeating the rest of the testimony. *Lewis v. Workmen's Compensation Appeal Board,* 508 Pa. 360, 366, 498 A.2d 800, 803 (1985). The following exchange occurred during cross-examination:

Q. As I understand your testimony, it is not possible for you to determine the origin of the cancer in George Billing; is that correct?

A. No, that's not what I said. I said that based on the examination of the pathology, the microscopic features of the tumor present in the left breast indicated it was from the adrenal rather than from any other site. R.R. 153a. In short, Dr. Pietra's testimony was unequivocal and cannot be characterized as not ruling out a primary lung tumor.

to firefighting or to any particular occupation.

Dr. Rodman further observed that Claimant did not suffer an underlying pulmonary problem resulting from firefighting that would predispose him to a primary lung tumor. There was no evidence of interstitial pulmonary fibrosis or asbestosis in any of the Claimant's many X-rays and CAT scans. He concluded that Claimant did not suffer an occupational disease. R.R. 215a–217a.

The Board remanded for a determination of whether the testimony of Dr. Pietra and Dr. Rodman was sufficient to rebut the presumption[5] that Claimant's "lung cancer" was caused by firefighting. This was error. It was Claimant's burden to establish an occupational disease, and he did not. The WCJ did not credit Dr. Gelfand's testimony that Claimant had lung cancer, and the only biopsy from Claimant's lung tissue showed that it was a metastatic tumor, *i.e.*, from another site. In short, the record was devoid of any evidence to support a finding that Claimant suffered lung cancer, which was a necessary precondition to the presumption established in Section 301(e) of the Act, 77 P.S. § 413.

I would reverse the Board and affirm the initial decision of the WCJ.

---

5. The presumption applies to causation of the occupational disease not to the diagnosis or establishment of the occupational disease. Accordingly, if Claimant had established a primary lung cancer, then the statutory presumption would have supported a finding that the disease was caused by firefighting and not by his history of cigar and cigarette smoking.