### SUN HOME HEALTH VISITING NURSES, Petitioner,

v.

### WORKERS' COMPENSATION APPEAL BOARD (NOGUCHI), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Oct. 4, 2002.
Decided Jan. 30, 2003.

Martin J. Fallon, Jr., Philadelphia, for petitioner.

Annabelle R. Cedar, Philadelphia, for respondent.

BEFORE: FRIEDMAN, Judge, and LEADBETTER, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Sun Home Health Visiting Nurses (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the workers' compensation judge (WCJ) grant-

ing the claim petition of Susan Noguchi (Claimant). We affirm.

Claimant was employed by Employer as a visiting nurse since January 1992. On February 11, 1999, Claimant filed a claim petition, alleging that she was disabled due to hepatitis C with progressive liver failure contracted from multiple needle sticks sustained in the course of her employment with Employer. Section 108(m) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* added by Section 1 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1(m), then in effect, listed the following as occupational diseases under the Act: "[t]uberculosis, *serum hepatitis, or infectious hepatitis* in the occupations of blood processors, fractionators, *nursing or auxiliary services involving exposure to such diseases.*" (Emphasis added.)

To support her claim petition, Claimant testified as follows. During her employment with Employer as a visiting nurse, Claimant was exposed to blood and blood products daily and had six or seven needle sticks. Claimant reported to Employer only one of those needle sticks that occurred on September 11, 1992. Claimant also had two needle sticks in 1987 and 1988 when she was a nursing student at Geisinger Medical Center. Claimant did not have any other exposure to blood, such as blood transfusion, an organ transplant, a tattoo or intravenous drugs. In August 1998, Claimant was diagnosed as suffering from hepatitis C as a result of diagnostic tests performed before a scheduled surgery. A subsequent liver biopsy confirmed the diagnosis. In October 1998, Claimant informed Employer that she had contracted hepatitis C in the course of her employment. Claimant stopped working on January 12, 1999 due to severe weight loss, nausea, vomiting, severe fatigue, insomnia and frequent infections caused by side effects of medication she was taking to treat hepatitis C.

Claimant also presented the deposition testimony of her treating physician, William R. Somers, M.D., who is board-certified in internal medicine and gastroenterology. Dr. Somers testified that hepatitis C, which is a disease different from hepatitis A and hepatitis B, known as "infectious hepatitis" and "serum hepatitis" in archaic terms, respectively, is caused by a particular virus spread through blood exposure, such as needle sticks, blood transfusion and perinatal transmission; a source of infection cannot be identified in 40% of people who contract hepatitis C; after discussing all possible causes for hepatitis C with Claimant, he concluded that she contracted hepatitis C through a needle stick injury sustained while performing her duties as the visiting nurse with Employer, although it was impossible to identify any particular needle stick causing her hepatitis C; and as of July 1999, Claimant was only capable of performing sedentary work for no more than four hours a day.

In opposition to the claim petition, Employer presented the testimony of its chief of human resources and director of home health services. They testified that Claimant failed to report the alleged needle stick incidents, as required by Employer's policy, except the needle stick incident that occurred on September 11, 1992. They conceded, however, that nurses are exposed to a high risk of needle sticks. Employer's expert witness, Roseann Levan, a registered nurse and an instructor at Bloomsburg University, testified that Claimant had a contaminated needle stick on September 17, 1987 when she was a nursing student, and that needle stick injuries are most common work-related injuries sustained by nurses.

Employer also presented the deposition testimony of William S. Hauptman, M.D.,

who is board-certified in internal medicine, gastroenterology and liver diseases, and reviewed Claimant's medical records. Dr. Hauptman testified that hepatitis A, previously known as infectious hepatitis, is caused by a virus transmitted through tainted food or person-to-person contacts such as handshakes; hepatitis B, also known as serum hepatitis, is caused by a DNA virus spread through blood exposure; hepatitis C, which was unknown to the medical community until 1989, is a completely separate disease caused by an RNA virus; the cause of hepatitis C is unknown in 40% of patients; the incidents of hepatitis C is 1% in Claimant's occupation and 1.8% in the general population; and Claimant's hepatitis C could not be attributed to her occupation because the incidents of contracting hepatitis C in her occupation are not greater than in the general population.

The WCJ accepted as credible Claimant's testimony regarding the six or seven needle sticks sustained during her employment and her ongoing disability. The WCJ also found credible Dr. Somers' opinion that Claimant contracted hepatitis C most likely through the needle sticks sustained during her employment with Employer and that she was disabled due to the side effects of the medicine she was taking to treat hepatitis C. The WCJ accepted the testimony of Employer's witnesses only to the extent that they admitted that Claimant was disabled due to hepatitis C and that needle stick injuries are most common injuries for nurses.

Rejecting Employer's argument that hepatitis C was not an occupational disease under Section 108(m) of the Act then in effect because it only listed infectious hepatitis (hepatitis A) and serum hepatitis (hepatitis B), and not hepatitis C,[1] the WCJ concluded that Claimant was entitled to the rebuttable presumption as to the causal relationship between her hepatitis C and employment under Section 301(e) of the Act, added by Section 3 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 413, which provides:

If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

Concluding that Employer failed to rebut the presumption under Section 301(e), the WCJ granted Claimant's claim petition.[2] On appeal, the Board affirmed the WCJ's decision. Employer's appeal to this Court followed.[3]

---

1. While Employer's appeal from the WCJ's decision was pending before the Board, the Legislature amended the Act on December 20, 2001, effective immediately, specifically listing "hepatitis C" as an occupational disease in Section 108(m) and adding Section 108(m.1) to expand occupations, in which hepatitis C is a hazard, to include, *inter alia,* firefighters, police officers and ambulance corps personnel.

2. The WCJ also denied the petition of Employer's insurance carrier, Managed Comp/ TIG Premier Insurance Company, to join the State Workers' Insurance Fund as the responsible insurance carrier on September 11, 1992 when Claimant previously reported a needle stick to Employer. The WCJ's denial of the petition to join is not challenged by Employer on appeal.

3. Where, as here, both parties presented evidence before the WCJ, the standard of review of this Court is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa. 322, 652

A compensable "injury" includes an "occupational disease" as defined in Section 108 of the Act. Section 301(c)(2) of the Act, 77 P.S. § 411(2). A claimant seeking benefits for an occupational disease must first establish that he or she is suffering from and disabled by a particular occupational disease set forth in Section 108. *Buchanan v. Workmen's Compensation Appeal Board (City of Philadelphia),* 659 A.2d 54 (Pa.Cmwlth.1995), *appeal denied,* 542 Pa. 675, 668 A.2d 1137 (1995). Once the claimant meets this burden, he or she is entitled to the rebuttable presumption under Section 301(e) that the disease arose out of and in the course of his or her employment. *Id.* The presumption under Section 301(e) is an evidentiary advantage for the claimant who has contracted an occupational disease in an occupation or industry, in which such disease is a hazard. *City of Wilkes–Barre v. Workmen's Compensation Appeal Board (Zuczek),* 541 Pa. 435, 664 A.2d 90 (1995).

Employer contends that the WCJ erred in concluding that hepatitis C is an occupational disease under Section 108(m) of the Act then in effect, and that Claimant was therefore entitled to the rebuttable presumption under Section 301(e). Employer asserts that because hepatitis C was not known until 1989, the Legislature could not have intended to include hepatitis C as an occupational disease when Section 108(m) was added to the Act in 1972.

The facts in this matter are similar to those in *Jeannette District Memorial Hospital v. Workmen's Compensation Appeal Board (Mesich),* 668 A.2d 249 (Pa.Cmwlth. 1995), *appeal denied,* 544 Pa. 671, 677 A.2d 841 (1996), in which the registered nurse sought benefits alleging that she had contracted hepatitis in the course of her employment with the employer. The WCJ found that the claimant suffered from "non-A, non-B hepatitis (hepatitis C)." *Id.* at 250. The WCJ denied the claim petition, however, stating that the claimant failed to establish the causal relationship between her hepatitis C and employment.

In affirming the Board's order reversing the WCJ's decision, this Court in *Jeannette* treated the claimant's hepatitis C as "infectious hepatitis" under Section 108(m), stating that "[i]t is undisputed that Claimant in this case was employed as a nurse and that her disability was due to infectious hepatitis." *Id.* at 251. The Court concluded that the claimant was therefore entitled to the rebuttable presumption under Section 301(e) as to the causal relationship between her disability and employment. Noting the testimony of the employer's medical witness that the cause of the claimant's hepatitis could not be established, the Court concluded that the employer failed to rebut the presumption. This Court's interpretation in *Jeannette* that hepatitis C, i.e., non-A, non-B hepatitis, suffered by the nurse constitutes an occupational disease under Section 108(m), as enacted in 1972, is controlling in this matter.

Employer argues, however, *Jeannette* was wrongly decided and should be overruled because the Legislature's subsequent amendment of the Act on December

A.2d 797 (1995). We note that "the capricious disregard standard of review," previously applicable where only the party with the burden of proof presented evidence and did not prevail before the administrative agency, is now "an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers'* *Compensation Appeal Board (Marlowe),* —— Pa. ——, ——, 812 A.2d 478, 487 (No. 41 MAP 2001) (2002). Employer in this matter does not argue that the WCJ capriciously disregarded competent evidence in the record. The capricious disregard standard under *Wintermyer* is therefore inapplicable to this matter.

20, 2001 to add hepatitis C in Section 108(m) and expand the occupations, in which hepatitis is a hazard, demonstrates that the Legislature did not intend to include hepatitis C as an occupational disease in enacting Section 108(m) in 1972. In support, Employer relies on *Appeal of Manor Investments, Ltd.,* 163 Pa.Cmwlth. 226, 640 A.2d 946 (1994), *appeal denied,* 540 Pa. 634, 658 A.2d 797 (1994), holding that a change in the language of a statute ordinarily indicates a change in the legislative intent.

█ In so arguing, however, Employer totally ignores another well-established statutory construction rule that the Legislature's failure to amend the statute as interpreted by the court creates a presumption that the court's interpretation was in accordance with the Legislature's intent. *Commonwealth v. Willson Products, Inc.,* 412 Pa. 78, 194 A.2d 162 (1963). As Employer acknowledges, hepatitis C was not known to the medical community when Section 108(m) was enacted in 1972. If Section 108(m), as interpreted by this Court in *Jeannette* in 1995, was not intended by the Legislature, it would have amended that section to specifically exclude hepatitis C from Section 108(m). *Krivosh v. City of Sharon,* 205 Pa.Super. 498, 211 A.2d 109 (1965). The Legislature instead amended the Act on December 20, 2001, adding hepatitis C to Section 108(m) and substantially expanding the occupations subjecting employees to such disease. Contrary to Employer's argument, therefore, the December 20, 2001 amendment of the Act clearly indicates the Legislature's agreement with this Court's interpretation in *Jeannette* that hepatitis C constitutes an occupational disease under Section 108(m) before its amendment.[4]

█ It is undisputed that Claimant was employed in the nursing occupation when she was diagnosed as suffering from hepatitis C. Employer's witnesses conceded that a nurse's job duties involve a high risk of exposure to blood or bodily fluid through needle sticks. Hence, Claimant was entitled to the rebuttable presumption under Section 301(e) that her hepatitis C arose out of and in the course of her employment. Both Dr. Hauptman and Dr. Somers agreed that the cause of hepatitis C cannot be identified in 40% of patients. In addition, the WCJ, as the ultimate factfinder, rejected as not credible Dr. Hauptman's testimony that Claimant's hepatitis could not be attributed to her occupation. The WCJ instead accepted the testimony of Claimant and Dr. Somers that Claimant was exposed to blood only at work and that one of the needle sticks sustained during her employment with Employer probably caused her hepatitis. Employer therefore failed to rebut the presumption under Section 301(e) that Claimant's hepatitis was causally related to her employment with Employer.

Accordingly, the order of the Board is affirmed.

## O R D E R

AND NOW, this 30th day of January, 2003, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

4. Since we conclude that Claimant's hepatitis C was an occupational disease under Section 108(m), it is unnecessary to address Employer's contention that Claimant also failed to establish her entitlement to benefits for hepatitis C as an injury under Section 301(c)(1) of the Act, 77 P.S. § 411(1), an occupational disease under Section 301(c)(2), 77 P.S. § 411(2), or an occupational disease under the catchall or omnibus clause of Section 108(n).