IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marianne Grom,                          :
                                        :
                    Petitioner          :
                                        :
        v.                              : No. 1816 C.D. 2019
                                        : No. 1817 C.D. 2019
Workers' Compensation Appeal            : Submitted: June 12, 2020
Board (Urban Redevelopment              :
Authority),                             :
                                        :
                    Respondent          :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge[1]
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: March 19, 2021


        Marianne Grom (Claimant) petitions for review of the December 3, 2019 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) denying her reinstatement petition and utilization review petition and granting Urban Redevelopment Authority's (Employer) termination petition. Upon review, we affirm.

        On September 3, 2009, Claimant sustained a tenosynovitis repetitive motion injury to her right forearm during the course and scope of her employment as an accountant with Employer (2009 injury). Agency Record (A.R.), Item No. 10,

_____

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

at 3. On April 14, 2011, Claimant sustained another work injury when a chair slid out from underneath her, causing her to fall to the ground and hit her head on a filing cabinet (2011 injury). *Id.* The injury was recognized as a cervical strain and head contusion. *Id.*

Claimant returned to work on August 5, 2013, with no loss in earnings so her benefits for both injuries were suspended. In September 2013, Employer filed a termination petition for both the 2009 and 2011 injuries, alleging that Claimant had fully recovered from those injuries. In March 2014, Claimant filed review petitions for the 2009 injury alleging that Employer had failed to pay medical bills related to the injury, seeking to expand the injury to include carpal tunnel syndrome, and seeking a review of the medical treatment.

On May 27, 2016, WCJ Ignasick issued a decision disposing of Employer's termination petition and Claimant's review and reinstatement petitions. Claimant appealed to the Board, which affirmed the decision with modifications. The notice of compensation payable (NCP) for the 2011 injury was expanded to include cervical disc herniations at C5-6 and C6-7, an aggravation of Claimant's preexisting carpal tunnel syndrome on her right side, an aggravation of right side lateral epicondylitis, and right shoulder derangement with rotator cuff, labral, and biceps joint pathology. Claimant was awarded temporary total disability benefits for the 2011 injury from March 4, 2014, through March 28, 2014, due to carpal tunnel surgery. Employer's termination petition for the 2011 injury was granted only for the head contusion and concussion injuries. Employer's termination petition for the 2009 injury was denied. Claimant's benefits for both the 2009 and 2011 injuries remained suspended.

On July 11, 2017, Claimant filed a petition for utilization review (UR Petition), seeking review of the physical therapy provided by Josh Hubert from March 20, 2017, and ongoing. On August 3, 2017, Employer filed termination petitions alleging that as of May 31, 2017, Claimant had fully recovered from her 2009 and 2011 injuries. On September 12 and 13, 2017, Claimant filed reinstatement petitions for both the remaining 2009 and 2011 injuries, alleging a worsening of her condition since November 10, 2015.

WCJ Crilley consolidated the UR, termination, and reinstatement petitions. WCJ Crilley held a hearing, during which Claimant testified on her own behalf and presented the deposition testimony of Dr. Snell, a board-certified orthopedic surgeon. Employer presented the deposition testimony of Dr. Agnew, who is also a board-certified orthopedic surgeon.

At a hearing on May 7, 2018, Claimant testified that her condition has been getting worse and she reported a pain level of 10 out of 10. Reproduced Record (R.R.) at 23a. Claimant complained of headaches, and burning and fizzing sensations beginning in her neck and collarbone, extending down into her right bicep. *Id.* Claimant sought treatment for her increased pain in 2016 and had surgery on her right shoulder. *Id.* at 23a-24a. Claimant admitted that she was not currently experiencing any issues related to her carpal tunnel injury. *Id.* at 28a. Claimant testified that she is unable to work because of her headaches and pain, which are aggravated by working at a desk. *Id.* at 34a. Claimant admitted that she has not worked since May 2016. *Id.* at 35a. Claimant testified that she uses the computer at home, drives, and completes household chores. *Id.* at 35a-36a.

Dr. Snell testified that Claimant began treatment at his practice in April 2011, for a concussion and injuries to her elbow, shoulder, and neck. R.R. at 55a-

3

56a. Dr. Snell treated Claimant's shoulder with platelet rich plasma injections three times between December 2011, and January 2016. *Id.* at 57a-58a. Dr. Snell testified that Claimant underwent carpal tunnel surgery in March 2014, rotator cuff repair in June 2014, and physical therapy. *Id.* at 59a. Dr. Snell testified that a 2011 magnetic resonance imaging (MRI) revealed disc herniations at C5-6 and C6-7. R.R. at 62a.

Dr. Snell testified that Claimant complained of a 10 out of 10 pain level in June of 2016, so he ordered another MRI. R.R. at 66a-67a, 78a. Dr. Snell testified that based on the MRIs and Claimant's medical history, it was his opinion that Claimant's disc herniations and degeneration were incited by the 2011 injury. *Id.* at 79a-80a, 83a, 86a. Dr. Snell admitted that it is possible for disc degeneration to occur due to aging rather than a traumatic event, and that disc herniations can be reabsorbed. *Id.* at 86a, 104a. Dr. Snell testified that he did not think that Dr. Agnew's opinion is generally accepted in the medical community. *Id.* at 87a.[2] Dr.

---

[2] Specifically, Dr. Snell testified at his deposition, in relevant part, as follows:

> [Question:] Dr. Agnew made the statement that [Claimant] has been treated by 24 professionals. Do you know of any one of them who [determined] that this is just a normal aging process and she no longer suffers from the trauma in the cervical area of the 2011 injury, do you know of any other doctor that says that?
>
> [Answer:] No.
>
> [Question:] Dr. Snell, is what Dr. Agnew is stating generally accepted in the medical community?
>
> [Answer:] No.
>
> [Question:] Dr. Snell, sometimes there is more than one school of thought. . . . Is there any school of [thought] when you have four MRIs in the same spot showing traumatic degenerative arthritis in the osteophyte, that they have nothing to do with each

**(Footnote continued on next page…)**

4

Snell testified that he is continuing to restrict Claimant's work based solely on her subjective report of a 10 out of 10 pain level. *Id.* at 107a.

Dr. Agnew testified that he conducted an independent medical examination (IME) of Claimant on May 31, 2017. R.R. at 155a. Dr. Agnew also took a history and reviewed Claimant's medical records. *Id.* at 157a. Dr. Agnew opined that Claimant was fully recovered from both the 2009 and 2011 injuries, and that any lingering issues were degenerative in nature. *Id.* at 187a-88a. Dr. Agnew testified that he reached this conclusion based on his examination of Claimant, Claimant's medical records, and a lack of evidence of structural damage in diagnostic tests. *Id.* at 189a-95a. Dr. Agnew testified that Claimant is able to return to sedentary job duties. *Id.* at 199a.

On September 28, 2018, WCJ Crilley granted Employer's termination petitions for both the 2009 and 2011 injuries and denied and dismissed Claimant's reinstatement petitions and UR Petition. In doing so, WCJ Crilley found as not credible Claimant's testimony regarding her 10 out of 10 pain level and that there was no improvement in her condition over a period of years. WCJ Crilley found the testimony of Dr. Agnew to be credible. WCJ Crilley did not accept the testimony of Dr. Snell where it conflicted with the testimony of Dr. Agnew. WCJ Crilley found that Claimant had fully recovered from both the 2009 and 2011 injuries, and that any ongoing medical problems are degenerative in nature and not related to the work injuries.

---

other and it is just a normal part of the aging process; is there any school of thought that says that?

[Answer:] Not that I know of. The evidence is compelling.

R.R. at 87a-88a.

5

Claimant appealed the WCJ's decision to the Board. On December 3, 2019, the Board affirmed the WCJ's decision. Claimant now petitions this Court for review.[3]

**Issues**

On appeal, Claimant argues that WCJ Crilley erroneously rejected relevant competent evidence by crediting Dr. Agnew's testimony. Claimant also asserts that WCJ Crilley's findings were not supported by substantial evidence. Claimant further contends that WCJ Crilley erred in accepting Dr. Agnew's opinion because it is not generally accepted in the medical community. Finally, Claimant submits that WCJ Crilley erred by failing to accept the findings of WCJ Ignasick, from a prior termination petition decision.[4] We disagree.

**Analysis**

Preliminarily, we note that in a termination petition proceeding, an employer bears the burden of proving that a claimant's disability has ceased, or that any current disability is unrelated to the claimant's work injury. *Parker v. Workers' Compensation Appeal Board (Dock Terrace Nursing Home)*, 729 A.2d 102, 104 (Pa. Cmwlth. 1999). "It is well established that the WCJ is the ultimate fact finder and is empowered to determine witness credibility and evidentiary weight." *Griffiths v. Workers' Compensation Appeal Board (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth.

---

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

[4] For clarity and ease of discussion, Claimant's arguments have been reordered.

6

2000). As the ultimate fact finder, the WCJ's findings are binding on appeal if they are supported by substantial evidence. *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corporation)*, 652 A.2d 802, 805 (Pa. 1995). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Claimant first argues that WCJ Crilley rejected relevant competent evidence by crediting Dr. Agnew's testimony that Claimant's herniated disc injury had resolved and that any lingering issue is degenerative in nature.[5] However, as articulated above, the WCJ is the ultimate fact finder, and as such has complete authority over credibility determinations and the weighing of evidence. *Griffiths*, 760 A.2d at 76. "When medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006).

---

[5] Notably, Claimant fails to argue that the WCJ or Board *capriciously* disregarded relevant evidence. Rather, Claimant's complaint is only that the WCJ *rejected* the evidence. As this Court has observed:

> We note that "the capricious disregard standard of review," previously applicable where only the party with the burden of proof presented evidence and did not prevail before the administrative agency, is now "an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, [812 A.2d 478, 487 (Pa. 2002)]. [The e]mployer in this matter does not argue that the WCJ capriciously disregarded competent evidence in the record. The capricious disregard standard under *Wintermyer* is therefore inapplicable to this matter.

*Sun Home Health Visiting Nurses v. Workers' Compensation Appeal Board (Noguchi)*, 815 A.2d 1156, 1159 n.3 (Pa. Cmwlth. 2003).

These credibility determinations will be upheld on appeal unless they were made arbitrarily or capriciously. *Id.*

In crediting Dr. Agnew's testimony, WCJ Crilley explained that Dr. Agnew's opinion that Claimant had recovered from her work injuries was supported by the MRIs and was consistent with the opinions of Claimant's other treating doctors. A.R., Item No. 10 at 10. WCJ Crilley only rejected Dr. Snell's testimony where it conflicted with Dr. Agnew's, noting that Dr. Snell himself found that Claimant's current pain complaints were "tough to swallow" despite years of treatment and rest. *Id.*, Item No. 10 at 11. WCJ Crilley articulated her basis for crediting Dr. Agnew's testimony, and it is supported by the record.

Claimant further argues that WCJ Crilley's acceptance of Dr. Agnew's testimony was a rejection of relevant competent evidence because she failed "to address the issue of Dr. Agnew[] being a professional witness." Claimant's Brief at 20. However, Claimant attempted to impeach Dr. Agnew's testimony on the basis of how many IMEs he performs in a year, the percentage of his practice that is devoted to such work, and how much he is paid for his testimony. R.R. at 139a-45a. WCJ Crilley considered this testimony in making her credibility determinations. As the ultimate fact finder, the WCJ has complete authority over the weight to be accorded such impeachment testimony. *Moore*, 652 A.2d at 805. Therefore, WCJ Crilley's actions in this regard are not a basis for reversing her decision.

Claimant next argues that WCJ Crilley's Finding of Fact Nos. 17d, 17m, and 17r were not supported by substantial evidence. WCJ Crilley found:

> d.     Dr. Snell reviewed several MRIs of the cervical spine beginning with one taken in 2011, which showed the two disc herniation at C5-6 and C6-7. He said that by 2014, the MRIs were showing some degenerative changes.

8

He explained to the Claimant that her increased pain was from her discs starting to wear out a little bit.

* * *

m.      Dr. Snell testified that with disc herniations it is possible for some of the water or fluid content to be reabsorbed, or "start in." Regarding the MRI of 2016, he read Dr. Whiting's interpretation that it only showed central bulging at C5-6 and that the herniated disc appeared to have resolved. He agreed that there can be some reabsorption and improvement of a herniated disc, and agreed that once it improved to a bulge that there was no longer nerve root compression. Regarding the formation of osteophytes, Dr. Snell agreed that the Claimant could have developed osteophytes even if she had not fallen.

* * *

r.      Dr. Snell agreed that the Claimant could do some type of sedentary duty work, but he had not released her to return to her preinjury position.

A.R., Item No. 10 at 8-9.

Contrary to Claimant's assertion, Dr. Snell's testimony supports all three of the above findings. Dr. Snell testified that degenerative changes were present in Claimant's 2014 MRI, and that the degeneration caused Claimant's increased pain. R.R. at 64a-65a. Dr. Snell also testified that disc herniations can be reabsorbed. *Id.* at 104a. Dr. Snell agreed that his partner determined that Claimant's C5-6 disc had reabsorbed based on Claimant's 2016 MRI. *Id.* Dr. Snell agreed that a disc bulge does not compress the nerve root like a disc herniation does. *Id.* at 105a. Dr. Snell further agreed that Claimant could have developed osteophytes even if she had not fallen. *Id.* at 106a. Finally, Dr. Snell testified that Claimant is capable of performing some types of sedentary work, but he has not released her to return to

9

her preinjury position. *Id.* at 114a. For these reasons, the WCJ's Findings of Fact, numbers 17d, 17m, and 17r, are supported by substantial evidence, and therefore must be accepted. We find the Board did not err in affirming the WCJ's decision in this regard.

Claimant next argues that Dr. Agnew's opinion that Claimant's herniated disc injury had resolved, and that any lingering disc bulge is degenerative, is not generally accepted in the medical community and thus does not satisfy the standard enunciated in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).[6] Claimant is incorrect. Whether Dr. Snell disagrees with Dr. Agnew's opinion goes to the weight of the testimony, not its competency, which is within the exclusive province of the WCJ. *See Moore*. Therefore, we find the Board did not err in affirming the WCJ's decision in this regard.

Lastly, Claimant complains that WCJ Crilley erred by failing to accept the findings of fact made by WCJ Ignasick in prior termination petition proceedings in this case. Specifically, Claimant argues that Dr. Agnew misidentified Claimant's injury by stating that the 2011 injury was caused by a fall from a seated position. Claimant asserts that "the issue of a fall from a *standing position* in an attempt to sit

---

[6] In *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1045 (Pa. 2003), our Supreme Court, in discussing *Frye*, explained:

> [T]he proponent of the evidence [must] prove that the methodology an expert used is generally accepted by scientists in the relevant field . . . This does not mean, however, that the proponent must prove that the scientific community has also generally accepted the expert's conclusion. We have never required and do not require such a showing.

Claimant does not argue that Dr. Agnew's methodology is not generally accepted by the medical community.

10

on a wheeled chair is clear, repeated many times, and at no time did the words 'seated position' or 'chair level' ever appear." Brief of Petitioner at 28 (emphasis added).

However, Claimant misrepresents her own stipulation of facts from WCJ Ignasick's May 27, 2016 decision. The stipulation states that Claimant's 2011 work injury "occurred while the [Claimant] was *sitting in a chair which slid from under her*," and that "[a]t a hearing . . . [Claimant] testified that relative to the April 2011 injury *she was sitting in a chair when the chair 'flew out*.'" A.R., Item No. 61 at 5-6 (emphasis added). We admonish Claimant that she continues to be bound by these stipulated facts.

Claimant also complains that Dr. Agnew's opinion that her current condition is degenerative conflicts with WCJ Ignasick's determination of her injuries. However, the fact that she prevailed in a prior termination proceeding does not bar Employer, under the doctrines of *res judicata* or collateral estoppel, from establishing in a subsequent termination proceeding that her disability has ceased. *Green v. Workmen's Compensation Appeal Board (Jefferson Health Services)*, 711 A.2d 575, 577 (Pa. Cmwlth. 1988). Earlier opinions of medical experts regarding the extent and nature of a claimant's injury do not equate to an adjudication by a WCJ. *Paul v. Workers' Compensation Appeal Board (Integrated Health Services)*, 950 A.2d 1101, 1105-06 (Pa. Cmwlth. 2008). Dr. Agnew is free to disagree with Dr. Snell regarding the current source of Claimant's continued symptoms. *See Paul*. Therefore, the Board did not err in affirming the WCJ's decision.

Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marianne Grom, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : No. 1816 C.D. 2019 |
| | : No. 1817 C.D. 2019 |
| Workers' Compensation Appeal | : | |
| Board (Urban Redevelopment | : | |
| Authority), | : | |
| | : | |

# **O R D E R**

AND NOW, this 19th day of <u>March</u>, 2021, the December 3, 2019 order of the Workers' Compensation Appeal Board in the above-captioned matter is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge